IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                Cr. No. 19-4447-KWR

MAROQUEZ CLAH,

    Defendant.

### DEFENDANT'S REPLY TO UNITED STATES' RESPONSE TO EMERGENCY MOTION TO MODIFY CONDITIONS OF RELEASE
(For Ruling Before a Magistrate Judge)

Defendant Maroquez Clah, by and through his counsel of record, Assistant Federal Public Defender Emily P. Carey, replies to the United States' Sealed Response in Opposition to Defendant's Emergency Motion to Modify Conditions of Release (Doc. 20). The United States opposes Mr. Clah's request to modify his conditions of release to allow him to terminate the third party custody of the La Pasada Halfway House and to permit him to reside with his parents and daughter at their home in Red Valley, Arizona under conditions, and asks instead that the Court retain conditions as set forth in its Order Setting Conditions of Release (Doc. 14). Mr. Clah submits this Reply to briefly address the government's arguments.

### ARGUMENT

"In our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno,* 481 U.S. 739, 755 (1987). Accordingly, the United States Supreme Court has long recognized the constitutional limits on pretrial detention. *See, id.* at 746-48 (holding that restrictions on pretrial release of adult arrestees must be carefully limited to serve a compelling governmental interest). When structuring release of a defendant, the judicial officer must impose the least restrictive condition or combination of conditions necessary

1

to "reasonably assure" the defendant's appearance as required and to "reasonably assure" the "safety of any other person and the community." In considering appropriate conditions of release, a Court must consider the factors under 18 U.S.C. § 3142(g). This Court has the authority at any time under 18 U.S.C. § 3142(c)(3) to amend its order to impose additional or different conditions.

Addressing the factors under 18 U.S.C. § 3142(g), the United States argues that Mr. Clah poses a danger to the community and that there are no conditions that could ensure safety to the community were he to be permitted to live with his family. As a preliminary matter, Mr. Clah recognizes that the charge against him is a serious one. However, the crime charged is not categorically a crime of violence under Tenth Circuit case law, in part because it involves a less culpable *mens rea*. *See* Tenth Circuit Pattern Jury Instruction 2.54.1 (requiring only "gross negligence"); *see also United States v. Bedonie,* 413 F.3d 1126 (10th Cir. 2005). Certainly, based on the Indictment, the grand jury determined there was probable cause to proceed with the charge against Mr. Clah. (*See* Indictment, Doc. 2). However, the defense is still reviewing discovery and conducting its own investigation, and does not concede to the United States' version of events.

Turning to Mr. Clah's history and characteristics, the United States references Mr. Clah's 2018 DUI conviction in tribal court to support its opposition to Mr. Clah's request for modification of conditions. However, as the Court can see from Government's Exhibit 2, Mr. Clah was sentenced to 90 days of supervised probation, which he successfully completed. (*See* Gov't Ex. 2, pg. 1). The probation officer reported that Mr. Clah reported to meetings with Probation/Parole Services on a bi-weekly basis as scheduled, "did not miss any scheduled report-ins," complied with the conditions of probation, and maintained full-time employment. (*See, id.*). The Court modified Mr. Clah's order to recommend attendance at a Life Skills/Moving Forward course in lieu of set number of AA meetings to allow Mr. Clah to maintain employment. In making this

recommendation, the probation officer wrote that "Mr. Clah has been a law abiding citizen and working full-time to provide for" his family. (*See* Gov't Ex. 2, pg. 5). Mr. Clah's behavior while on supervised probation through tribal court demonstrates that he can perform well under conditions while still living at home.

Mr. Clah's behavior thus far on pretrial release also suggests that he can comply with any conditions imposed on him by the Court. The United States notes that "compliance is the minimum" of what is expected of individuals at La Pasada, and intimates that this is not a factor the Court should consider in evaluating Mr. Clah's request for modification. However, courts often consider an individual's conduct on pretrial release both in making determinations pertaining to modifications of pretrial release conditions and at sentencing. *See, e.g., United States v. Moten,* 2006 WL 617947 (D. Kansas Feb. 14, 2006) (considering at sentencing the defendant's good behavior while on pretrial release); *United States v. Diaz,* 2012 WL 681795 (D.N.M. Feb. 22, 2012) (considering the defendant's behavior on pretrial release at sentencing). In fact, this Court stated that should Mr. Clah do well at La Pasada, it would consider possible modification of conditions in the future. In this case, Mr. Clah has followed all of the house rules and pretrial release conditions without incident. He has been actively participating in weekly counseling sessions with a focus on substance abuse and parenting skills, and would continue counseling at Cottonwood Clinical Services in Farmington if the Court grants his Motion.

Mr. Clah provided the Court with additional information about his history and characteristics that weigh in favor of a modification to his conditions of release in his Motion and at the detention hearing. The Court also has access to the pretrial services report, so Mr. Clah will not repeat detail of this 18 U.S.C. § 3142(g) factor here. Overall, Mr. Clah has minimal criminal history and has, despite the United States' contentions otherwise, been a supportive son to his

parents and loving father to his daughter. He has always been a hard worker and has maintained stable employment with the same company since October 2017. Mr. Clah advises that his employer would welcome him back as an employee. Over the last month away from his family, Mr. Clah has become acutely aware of what he has to lose were he to return to Red Valley and violate his conditions of release.

     Mr. Clah appreciates that given the charged offense and a history of one DUI conviction the Court may have concerns about returning Mr. Clah to his home environment.  However, Mr. Clah believes that, in addition to the conditions already imposed on him by the Court – to include a prohibition on operating a motor vehicle and zero tolerance for alcohol use - there are additional conditions the Court could impose to assuage those concerns.  Mr. Clah's mother would be willing to serve as third party custodian for her son, understanding that she would need to report any violation of his conditions of release to the pretrial services officer. Mr. Clah reiterates that he effectively has no access to a vehicle that he could operate.  He advises that he does not have a vehicle and that his mother has an employer-owned vehicle that only she is permitted to operate. Mr. Clah's mother confirmed this information with undersigned counsel. However, should the Court be concerned with Mr. Clah's movement, he would be willing to submit to electronic monitoring under home detention or any other condition the court deems appropriate. Mr. Clah will be required to continue counseling and any additional substance abuse treatment recommended by pretrial services or ordered by the Court. As mentioned above, pretrial services had already identified a local provider for treatment. Finally, U.S. Probation and Pretrial Services offices throughout the United States are regularly tasked with performing their duties across large jurisdictions. The U.S. Probation and Pretrial Services Office from the District of Arizona conducted a collateral home assessment of the Red Valley residence and determined both that the

home was suitable, and that the office had the capacity to take responsibility for Mr. Clah's pretrial supervision.

Finally, the United States argues that the "COVID-19 global pandemic is not a changed circumstance that necessitates reconsideration" of Mr. Clah's conditions of release. As a preliminary matter, Mr. Clah is not required to demonstrate "changed circumstances" in requesting a modification of conditions and the Court has authority to amend or modify its order at any time. *See* 18 U.S.C. § 3142(c)(3); *see also United States v. Maloy,* 2020 WL 1333286 (D. Colo. Mar. 23, 2020) (questioning whether the defendant was required to present evidence of changed circumstances where the court was not reopening the detention hearing and where the court at the initial detention hearing had contemplated a motion to amend conditions of release in the future). However, Mr. Clah is asking the Court to consider the new factor of the public health crisis as described in his Motion when assessing the propriety of Mr. Clah's request. At this point, concerns pertaining to COVID-19 and the risk of communal living are not merely speculative.[1]  Moreover, even if he was required to present evidence of changed circumstances, Mr. Clah submits that he has met his burden given his exemplary conduct while on pretrial release, the deterioration in his father's physical and mental health, the inability to access medical providers including his surgeon for urgent follow up care, and concerns for his own health and the health of his family because of COVID-19.

---

[1] *See, e.g.* New Mexico Department of Health, COVID-19 Update, reporting 112 cases of coronavirus, available at https://cv.nmhealth.org/ (last accessed on 03.26.2020); Nichole Chavez & Holly Yan, Coronavirus has now killed more than 1,000 people in the U.S. But health officials say the peak is yet to come, CNN (Mar. 26, 2020) (noting that the U.S. has more than 78,000 cases of novel coronavirus and at least 1,135 people have died but noting that deaths could peak in 3 weeks); Ann Marimow & Tom Jackman, *Prosecutors, defense attorneys press to release inmates, drop charges and thing jail population in response to the coronavirus*, Washington Post (Mar. 19, 2020) (describing changes in detention and release decisions due to the coronavirus) (available at: https://www.msn.com/en-us/news/crime/prosecutors-defense-attorneys-press-to-release-inmates-drop-charges-and-thin-jail-population-in-response-to-the-coronavirus/ar-BB11qoAe).

WHEREFORE, for the foregoing reasons, Mr. Clah respectfully requests that the Court modify his conditions and release him from the third party custody of the La Pasada Halfway House, transfer his pretrial supervision to the District of Arizona, and modify his travel restrictions so that he may reside with his parents at their residence in Red Valley, Arizona as outlined in his Motion (Doc. 19).

    Respectfully Submitted,

**FEDERAL PUBLIC DEFENDER**
111 Lomas NW, Suite 501
Albuquerque, NM 87102
(505) 346-2489

*Electronically filed March 26, 2020*
/s/ Emily P. Carey
Assistant Federal Public Defender
Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to the following: Novaline Wilson, Assistant United States Attorney.

*Electronically filed March 26, 2020*
/s/ Emily P. Carey
Assistant Federal Public Defender